Good morning. May it please the courts, my name is Beth Creighton. I represent Janell Howard, the opponent in this action and plaintiff, and I'd like to reserve five minutes for the final case. So it's important to remember that defendants agreed in the first Howard v. Warren case in October of 2011 that the failure to hire Ms. Howard in July of 2011 was a separate claim. In the exert of records, page 62-63, counsel specifically said that's another claim, that's another set of circumstances, it's outside the scope of this lawsuit. Defendants are therefore traditionally stopped from making an argument, the contrary of which they're doing here today. Judge Aiken agreed with that in Howard v. Warren, allowing only the July 6, 2011 letter in for evidence of damages. Judge McShane, also in oral argument, agreed in S.R., the supplemental exert of record, page 13, and he says, I agree, you certainly are claiming a different claim. So, in summary, on this particular issue of claim preclusion, the claims are based on two separate sets of facts. You have two separate nucleuses of facts, if you will. The claim in Howard v. Warren was a First Amendment violation for speaking out, making a complaint to the Board of Accountancy on the auditor of the city. The second, and her resulting termination. The jury decided in the first Howard case that, in fact, her termination was because of her First Amendment speech, and that is the only thing that should be issued included in this particular action. In the second action we have, there's a completely different set of facts. One is that Ms. Howard had fought the lawsuit and is therefore being punished for bringing the lawsuit and succeeding in the lawsuit by not getting the job back at the City of Queens Bay, the Board of Finance Director position. So, to say we agree with you that issue and claim preclusion do not apply here, why should you ban the merits? Well, here we have a question of facts as to whether or not the decision not to hire Janelle Howard after the decision was made in the first Howard case was because of the lawsuit in general. Isn't there pretty compelling evidence that the city wanted to hire Baker and that's what they were doing, and it's pretty hard to say that anything else was motivating them here, isn't it? Well, I think that when you look at the set of circumstances, you have this July letter in 2011 that says, we're not even going to consider you because you were terminated for cause. Once that reason goes away and the jury decided, hey, she's not terminated for cause, she's terminated. Wait a minute, why does the reason go away? That reason is no longer valid because the jury decided that she was not terminated for cause. She was terminated in violation of her First Amendment rights. She was terminated because she made a complex Board of Accountancy. The city didn't know that yet at the time when they wrote the letter. Correct. But at the time that they announced the decision to put Suzanne Baker in that job, and there's still no question of fact of when that decision was made. There's no suggestion that that decision was made. I think there is. There's evidence that they say in their policies that they, in fact, hired the most qualified person. Janelle Howard had that position for 10 years. There is a question about that. Indeed, she was fired for cause originally. Originally, she was fired for cause. But that fact is precluded from being any other thing than what the jury, in fact, decided in Howard 1, which was she was not fired for cause. She was fired because she made a complex Board of Accountancy, and the city of Coos Bay retaliated against her because of that. If you were invoking her issue preclusion, you're saying that in Howard 2, the jury has to be instructed the letter that they sent was impeached by the jury verdict, so they can't rely on that letter anymore. Correct. Yes. Was Craddock involved in the original decision to terminate her? Yes, he was. He was involved. He was the police chief at the time of Coos Bay, and he had done the investigation in parts of Janelle Howard and whether or not the policy. Did he have anything to do with his decision-making to terminate her? I believe that his recommendation was to terminate her to the city manager. He was the police chief. Yes, he was. He recommended terminating her. Yes, to the city manager. He was involved in giving that information to the city manager, which resulted in her termination. So your theory is that once that gets established by the jury in Howard 1, then it's open season on Howard 2 to say that the letter was, in fact, false. False reason. It was really retaliation for suing them, and therefore all this going through this external searches twice and turning down other candidates was a sham of sorts. And in any event, she had been in that pool. She had special qualifications that would have elevated her above everybody else that they turned down and would have made her superior to Baker. That's correct. And as Coos Bay policy, in fact, some are the most qualified person we know that they did, right? Baker didn't have as many years of qualification as other candidates, right? And the absence of them following that policy, the failure to follow that policy is evidence of pretext. But do you have evidence that they were just retaliating or discriminating against the other people with more qualifications? I'm sorry, I don't understand. So there were several people who had more qualification than Baker. They hire Baker. So your explanation for why they didn't hire your client is this is pretext for retaliation, but what about the other people with more qualifications? Those other people were not selected for different reasons. What were the different reasons? I think that they tried to hire a couple of them, and they refused to come, or the negotiations fell through. They didn't want to work for the money that they were being offered. But weren't there additional people with more years of qualification, more years of experience, who were never offered the job? There were people that had different qualifications that the city of Houston decided were not appropriate people to work there for whatever reason. Do we have evidence of those reasons? Is there any way to explain those away in a way that makes it seem like the entire thing was pretext? To explain away the reasons that the other more qualified people did not get hired? Yes. I mean, there's definitely other reasons that were given in the depositions that, you know, are not part of the record. Even if they legitimately turned them down, even though on the paper they had more years of experience, if your client was in that pool, she would have had adequate years, and she would have had ten years of serving, served in the position, much more familiarity. So she was a unique candidate in comparison to everybody in both of those pools. Correct. Correct. And then you have a candidate, the candidate that was selected was not even an applicant. She didn't apply for the job. She never wanted the job. She refused the job twice before, and they kept pressuring her to take the job. And when she finally said yes, and when they finally accepted her assent to take the position, they put her on a temporary basis, a probationary basis, even though she'd been serving as interim director for, you know, several months before that. So the whole way that she was hired is suspicious. She didn't apply for it. She didn't want the job. It violated the policy of hiring the most qualified. And those are the facts that you can raise inference from to show that this, in fact, was motivated by retaliatory purpose. And you say the retaliatory purpose was that she filed the lawsuit? Yes, it was successful. Is that disconnected from the original decision to terminate her? Yes. Yes. If there are no further questions, I'd like to reserve the rest of my time for the public. Let me make sure you understand my question. Okay. I understood you to be suggesting that this was an ongoing prejudice against her, that it was manifested in the first termination, and that the fact that she filed the lawsuit was just another trigger for retaliation, but it was all part of the desire that led to the first termination. So it was ongoing. You're not suggesting that? No. The first case was retaliation for filing a board of accountancy complaint. The second case, the facts of the complaint state clearly that it was for filing a lawsuit. Okay. But your argument depends on it being pleading the lawsuit, not just filing a lawsuit, correct? Yes. So is it implausible that it – is that plausible just psychologically? I mean, wouldn't the anger come if it comes at all from filing the lawsuit? Why is it so much worse to plead the lawsuit? Because filing a lawsuit is just, you know, potentially you're telling the city of Kings Bay that they're wrong, but when you're actually saying you were wrong. But it's not her saying that she won that. It's the jury. So her action was filing the lawsuit and pursuing it, which she had already done before the relevant time. Right? But pursuing it through trial is more significant because you get the bad press and you get all this other stuff that goes with it. And also, you know, when she won the lawsuit, what Mr. Paddock did is he basically, you know, held up his middle finger and he said, look, I don't care what the jury said, and I'm going to not hire you anyway. But the person was hired before the jury verdict. The person was hired in late October to begin November 1. The jury verdict came down on November 2. So there's no way in the world that the city would have known that she was going to win the lawsuit, was she? That's a question of fact, Your Honor. We have evidence in the record that says that there was a congratulations letter on November 7 that said congratulations, you're now the city finance director. But Baker accepted the job in October, what, 26, 27, something like that? Yeah, it's a question of credibility, which is also a question of fact. My name is Gordon. My name is Robert Hans. And I represent the defense in this case. First of all, this is on a bill based on a record, and I don't know of anything in the record that shows that Roger Cradock recommended the termination of the jury of Wade Packers, who was terminated for cause by the city manager. So I don't believe that's part of the record. Second of all, in the Howard 2, the lawsuit we have right now, they're not seeking reinstatement. Okay. So this case goes to the jury. And remember in Howard 1, identical damages were sought in Howard 1 as in Howard 2. Their theory is that after Howard 1, the plaintiff recovered from the pain. She never asked for reinstatement. Okay. So when the judge asked the plaintiff's attorney, Laurel Parker, what did you do with the first verdict? Okay. So she recovered $200,000. She wanted $700,000. So the plaintiff said, well, in Howard 2, we just cracked the first verdict. Okay. So let's take through the scenario. We go to trial on Howard 2. They're not asking for reinstatement. They're just asking for a front pay, just like Howard 1. So they bring out. Punitive damages, right? Not just front pay, punitive damages also? I'm having an insurreignment for $1,000, and emotional distress pay was $50,000, she just asked. So those are not overlapping, right? I mean, you could say she can't get front pay at all, but that wouldn't make the case go away. What if it's the other damages she's seeking? Well, she's seeking the exact same as she did in this case. But if it's emotional distress for having been retaliated against on a new ground, then it's new emotional distress, isn't it? And what the judge basically said, and what we agreed with, she was terminated, not rehired. She's still not rehired. So it's all going to be connected. Let's just say we just took the front pay. Okay. Howard 1 is over. You just grew out, and you got all your front pay until you retire. Okay. Now they say we have to rehire you. So the verdict comes in, you get all your front pay until you retire because you were not hired, and they submitted the letter, July letter. So we didn't accept your application, and you get this front pay. And now we have to hire you. But you said she's not seeking a reinstatement. That's right. So then why would you have to rehire her? Exactly my point. Why would we have to rehire her after Howard 1? She's already been compensated for front pay. But I thought she wasn't seeking a reinstatement in Howard 2. Is she seeking a reinstatement in either lawsuit? No. So then why are you talking about whether we would have to rehire her? Their position is as soon as the jury verdict came in, we had to rehire her. That's what they're saying we did in their complaint. They said you failed to hire her once the jury verdict came in. Our position is you've already been paid for not being hired. You have all your front pay. If we rehire you, give us back the front pay. We never have to rehire you again. We have paid our price for the termination, the wrongful termination. You've been given your front pay. Okay. So you have front pay. They say we should rehire you. Now we're at Howard 2. They're not seeking reinstatement. All right? So let's just say the jury goes back to $100,000 in Howard 2. Do they have to subtract the $200,000 they got before for the common damages? That's what the plaintiff suggested. So if they get $100,000, front pay came out the most in distress. You subtract the $150,000, they owe us $50,000. Now, take it one step further. In Howard 2, the plaintiff's case, go to the jury. The jury comes back at $100,000. We don't hire her again. So they sue us again because we didn't rehire her after Howard 2. And their position would be that you should know you're retired for the second time you have to hire her. Our position is you didn't seek reinstatement. Why do we have to rehire you? When does it stop? So that's why we come to the issue of their whole lawsuit is premised on when the jury verdict came back in November 2, you had to hire Ms. Howard. That whole premise is false. You don't have to rehire somebody if they get front pay. You have to rehire them if the secret is sealed. What do you think the front pay included in Howard 1? It included everything that Ms. Howard testified on that trial, and we sent that out in our brief. There's a city of different attorney handled this case in Howard 1. They didn't bring an expert. So was she testifying or was she contemplating it? She said, I'm working now for the city of Brookings, so I'm making less at the city of Brookings than I did for Goose Bay. The difference is, at the time, I had I think $16,000 a year, and then she multiplied that, too, and then she said I'm going to retire in 2028. So she multiplied it down. I don't even think she reduced it to present value. There's no objection to. I think she came up with a figure of $730,000. Then there was a difference in benefits. Given that count, she just acted as her own expert and went through everything she'd lost as a result of being terminated and everything she'd lost as a result of the city, in July, and retained her application. And she calculated it completely out. My position is because you did not ask for a reinstatement and you've been fully compensated for your damages, we had no obligation to deliver anything back to Howard. So in the second case, she alleges that because of the first lawsuit, she was retaliated against when she applied for a new job. Now maybe you can say she's already been paid all the salary for any new job, but why couldn't she have emotional distress damages for the new injury of not being hired the second time? Because when we turned down the application in July, she suffered that emotional distress right there. Are you referring to the letter where we say we're not going to guarantee your application for emotional distress? Well, I was referring to when she actually didn't get hired in October and November. And that's when the new job was filled. Right. So their position is that when the jury verdict came back, she should have been rehired. Right. And so why couldn't she have emotional distress damages for not getting hired in October or November, depending on the date? Well, I suppose if you buy into the theory that she asked you, we had to hire her after the jury verdict, and we did not hire her, I suppose she could have suffered emotional distress. So you can't get out of this, then, with saying that the damages are overlapping and we have to get to some other issue to resolve this case. Well, I would say that's part of what caused her to have recourse to being on the merits of the case. And why do you think she went on the merits, then? Okay. First of all, we had no obligation to rehire her. There's no requirement to hire somebody after a jury verdict. Otherwise, here's what you do when you advise your clients. When they're terminated for cause, all you do is ask for front-end damages, and then, if you want to, you can reapply, have them turned down after you file the lawsuit, and you're terminated. The lawsuit's filed. The jury trial's here. Somewhere in between, apply for another job with this. It's going to be turned down because you just got terminated for cause. Then you go all the way back, and you go to the jury. Don't get this movie and save it. Just ask for front-end damages, and then once you win, you can get this movie in because all you have to do is file a complaint and say you were not given the job after the jury verdict because you filed a lawsuit. What evidence is there in the record that once that jury verdict was returned that we did anything? She didn't call us up the next day to say hire me. We made no decision as to her. She's not even within our radar. She doesn't come back and say, I don't want the front-end paying me for the job. What did we do after the jury verdict as to her? Nothing. So if she would have applied immediately after, then we would turn it down or whatever. Something happened. Not one thing happened after the jury verdict. On the state law claim, because if we get to the merits, we also have a state law claim under ORS 6598 and 30. It says it's an unlawful practice for an employer to distract, promote, et cetera, an employee. They say that that statute covers her. She was not an employee at the time of the jury trial. She hadn't been an employer for three years. Oregon has a lot of statutes that you can't discriminate somebody hiring across this. And so what those statutes do, we set a whole bunch of them out, but those statutes say, and I'll just use an example, let's just say disability, it's an unlawful employment practice for an employer to refuse to hire, et cetera, et cetera, an individual. So whenever the Oregon statutes refer to it's unlawful to refuse to hire a person, the person they refer to is always an individual. So if that statute doesn't say it's an unlawful employment practice for an employer to refuse to hire an employee, this wouldn't make any sense. You're not an employee until you're hired. So to that law that says an employer can't do so to an employee, they'd rather be hired. So it would be ridiculous to say you can't, it's unlawful employment practice for an employer to refuse to hire an employee. So because the other statutes under ORS specifically refer to individuals that talk about refusing to hire, our position is ORS 659.8.2307-6. Nikki. First of all, I'd like to correct a mischaracterization of what happened in the oral argument. So when the judge asked what do we do with these future wages that were supposedly awarded by the court, there's no evidence that they were future wages. It's just the only evidence there is, is that there's $150,000 in economic damages, and that amount exceeds the amount that had to be had for back pay. And I would submit to the courts that we cannot go into the minds of the defendants who know what those damages are for. Therefore, we cannot presume that those are front pay damages, as the counsel is doing. Secondly, what I did say in the oral argument below is that this is an issue, if this, in fact, is an issue, this is an issue post-trial, for a post-trial motion that the defendants would presumably make, saying, look, she already got paid for front pay, and we would deal with it at that point, but not in this particular point where we're talking about issue preclusion and claim preclusion. Second of all, the court is correct in saying that this is a separate emotional distress. There's a separate violation, separate emotional distress incident, separate punitive damage incident with Mr. Kravic, and also that we're not saying that the city, in fact, had an obligation to rehire Ms. Howard, but they did have an obligation not to retaliate and not to discriminate based on a protected activity that she engaged in. But is retaliation a failure to rehire? What is the act of retaliation that you're reminding us of? The act of retaliation is that they cannot rehire her, yes. So you are saying they have to rehire Ms. Howard. They're also not considering her for rehire because of the fact that she filed a lawsuit in the first place. So, I mean, both of those things are what's at issue here. If they would have ---- Okay, so you take it to the jury then on that jury. What are the damages? How do you articulate damages? Is it all emotional distress because she wasn't applying, or did they speculate that if she had been not discriminated against, she would have been in that pool and would have gotten the job? I mean, it's for the jury to determine why she wasn't given the job in the first place. I understand, but then how would they calculate damages? There would be emotional distress. There would also be economic damages. Because she wasn't allowed to compete, and the theory is if she competed she would have gotten this job, and she'll protect that out. Correct, correct. And we don't know, you know, Mr. Franssen, that what we know is that she's been given all the front pay, that she was entitled to for the rest of her life, and that clearly is not the case. The jury gave what the jury gave. The jury didn't give $770,000, which is what Ms. Howard projected her future wage loss to be. The jury awarded $150,000 in economic damages. We don't know what that was for. Very clear. Thank you. Thank you. Thank you both sides for your arguments. The case is submitted.
judges: O'scannlain, Fisher, Friedland